IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAN SANG VONG,

    Petitioner,               No. CIV S-03-0199 GEB DAD P

    vs.

TOM L. CAREY, Warden, et al.,

    Respondents.           <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the judgment of conviction entered against him in the Sacramento County Superior Court on charges of attempted robbery and attempted extortion. He seeks relief on the grounds that: (1) the trial court erred when it allowed the prosecution to introduce evidence of prior uncharged acts to demonstrate intent; (2) the trial court erred when it failed to obtain a valid waiver and admission from petitioner of his prior conviction; and (3) jury instruction error violated his right to a fair trial. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

1

FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 18, 2000, a few minutes after the Hoa Viet restaurant closed, defendant accosted its owner, Cung Tran, and his wife's nephew, Tam Tran. Defendant demanded Cung give him $20. Cung told defendant he did not have any money, and defendant continued to aggressively demand money and swear at Cung. Defendant threatened to beat Cung up, and Cung thought defendant had a weapon so Cung ran back into the restaurant. Defendant began punching and kicking the door, threatening to beat Cung and threatening to take more money from Cung in the future.

Cung called the police. During the time Cung was waiting for the police to arrive, defendant continued to talk loudly and kick and punch the door. When two officers arrived, several people pointed defendant out.

Defendant claims he was simply begging money from Cung, not threatening him. Defendant had previously begged for and received money from Cung. Defendant argued Cung got tired of him begging for money and an argument ensued.

Defendant was charged with attempted robbery,[2] attempted extortion,[3] and making a terrorist threat.[4] It was also alleged defendant had a prior serious felony conviction.[5] A jury found defendant guilty of attempted robbery and attempted extortion and not guilty of making a terrorist threat. Prior to the close of the prosecution's case, defendant stipulated he had suffered a prior conviction for making a terrorist threat. Defendant was sentenced to state prison for an aggregate term of nine years.

Petitioner filed a timely appeal of his conviction in the California Court of Appeal for the Third Appellate District, claiming that: (1) the trial court erred when it allowed the prosecution to introduce evidence of prior uncharged acts to demonstrate motive and intent; (2)

---

[1] The following summary is drawn from the October 9, 2002, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-3, filed on June 9, 2003, as Exhibit D to respondents' answer.

[2] Sections 664/211.

[3] Section 524.

[4] Section 422.

[5] Sections 667, subdivisions (a), (b) through (I), 1170.12

2

the trial court erred when it failed to obtain a valid waiver and admission from petitioner regarding the fact of his prior conviction; and (3) jury instruction error violated his right to a fair trial. (Answer, Ex. A.) Petitioner's judgment of conviction was affirmed in its entirety in a reasoned decision dated October 10, 2002. (Answer, Ex. D.) On November 12, 2002, petitioner filed a petition for review in the California Supreme Court. (Answer, Ex. E.) That petition was summarily denied by order dated December 18, 2002. (Answer, Ex. F.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). See also Henry, 197 F.3d at 1031; Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

II. Petitioner's Claims

    A. Uncharged Prior Conduct

Petitioner's first claim is that the trial court violated his right to a fair trial by allowing the prosecution to introduce evidence of previous uncharged crimes in order to prove that petitioner possessed the requisite intent with respect to the crimes charged in the instant case. Petitioner contends that "there was a lack of sufficient similarity between the charged and uncharged offenses." (Pet. at 5.)

    1. Background

The state court record reflects that prior to petitioner's trial the prosecutor filed a motion seeking to admit evidence that in 1991 and 1988 petitioner committed acts of robbery and extortion similar to the acts charged in this case. (Clerk's Transcript on Appeal (CT) at 38-45.) The state trial court ruled that the acts occurring in 1991 were admissible pursuant to Cal. Evid. Code §§ 1101(b) and 352 to prove petitioner's intent. (Augmented Reporter's Transcript (ART)

/////

/////

at 3.)[6] On appeal, petitioner claimed that this evidence was "minimally relevant and highly prejudicial and should have been excluded." (Opinion at 3.) The California Court of Appeal rejected petitioner's arguments in this regard, explaining as follows:

> Here, defendant was charged with attempted robbery, attempted extortion and terrorist threats against a victim with whom he was familiar. To establish the charges against the defendant, the prosecution was required to prove he attempted to take another's property by the use of force or fear, attempted to obtain another's property by the use of a threat, and threatened the victim with death or great bodily injury, intending that his statement be taken as a threat. (footnotes omitted). Thus, two of the charges required proof that defendant intended to use force or the threat of force to obtain another's property, and one charge required proof that defendant intended his statements to be taken as threats.
>
> Defendant's intent to rob, extort and threaten was a disputed material issue. Defendant admitted he asked Cung for money, but argued he did not threaten him and that Cung had misconstrued his actions.
>
> The incidents in 1991 involved defendant threatening and/or committing physical violence against victims with whom he was familiar. Furthermore, the incident with Yang involved defendant asking for money, being refused and becoming violent. Defendant's prior use of force and threats of force to achieve his ends were relevant circumstantial evidence of his intent to use force and threats of force in this instance. (footnote omitted). The 1991 incidents were sufficiently similar to the conduct charged "to negative [the claim of] accident or inadvertence . . . or good faith or other innocent mental state, and tend[ed] to establish

---

[6] The California Court of Appeal described the admitted evidence as follows:

> The prior bad acts about which defendant complains were two incidents in 1991. In July 1991, defendant went to the apartment of his neighbor, Xin Yang, and while the two were sharing a beer, defendant asked Yang for money. Yang denied the request and asked defendant to leave. Defendant got angry, argued with Yang, punched him in the face, and threatened him. Also in July 1991, there were repeated problems with defendant threatening and assaulting tenants at the apartment complex where he lived with his grandparents. The threats included a threat to shoot the apartment manager or injure one of his family members. Ultimately, the apartment manager evicted defendant's grandparents because of defendant's conduct.

(Opinion at 3.)

5

>   (provisionally, at least, through not certainly) the presence of . . . criminal intent . . . ." (footnote omitted). Accordingly, we find no error in admitting this evidence.
>
>   Defendant also contends the trial court abused its discretion under Evidence Code section 352, in that the evidence "involved conduct much more egregious than that in the present case, and it was at best marginally relevant to prove the charged offenses." We disagree.
>
>   As discussed above, the evidence was relevant and probative on the issue of defendant's intent. Furthermore, the prejudice to which section 352 applies is """ evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."""" (footnote omitted). The evidence in question was simply not this type of evidence. The trial court could properly find that the prejudicial effect of this evidence was not substantially outweighed by its probative value. (footnote omitted).

(Opinion at 5-7.)

        2. <u>Analysis</u>

The question of whether evidence of prior uncharged acts was properly admitted under California law is not cognizable in this federal habeas corpus proceeding. <u>Estelle v. McGuire</u>, 502 U.S. at 67. The only question before this court is whether the trial court committed an error that rendered petitioner's trial so arbitrary and fundamentally unfair that it violated federal due process. <u>Id.</u> <u>See also</u> <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" <u>Mancuso v. Olivarez</u>, 292 F. 3d 939, 956 (9th Cir. 2002) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 899 (1983)). The admission of evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." <u>Jammal</u>, 926 F. 2d at 920. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." <u>Id.</u> (quoting <u>Kealohapauole v. Shimoda</u>, 800 F.2d 1463 (9th

6

1  Cir. 1986)).  For purposes of AEDPA, petitioner must demonstrate that the California courts'
2  rejection of his federal due process claim was contrary to or an unreasonable application of
3  "clearly established Federal law, as determined by the Supreme Court of the United States."  28
4  U.S.C. § 2254(d)(1); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).
5         The United States Supreme Court "has never expressly held that it violates due
6  process to admit other crimes evidence for the purpose of showing conduct in conformity
7  therewith, or that it violates due process to admit other crimes evidence for other purposes
8  without an instruction limiting the jury's consideration of the evidence to such purposes."
9  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by
10 Woodford v. Garceau, 538 U.S. 202 (2003).  Rather, the Supreme Court has expressly left open
11 this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,
12 we express no opinion on whether a state law would violate the Due Process Clause if it
13 permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").
14 Accordingly, the state court's decision with respect to this claim was not contrary to clearly
15 established federal law.
16         In any event, petitioner's trial was not rendered fundamentally unfair because of
17 the admission of evidence of petitioner's prior uncharged acts.  The 1991 incidents about which
18 the jury heard were no more inflammatory than the circumstances of the charged crimes.  In
19 addition, as explained by the state appellate court, evidence of these uncharged acts was relevant
20 to show petitioner's intent in connection with the charged offenses.  See Walters v. Maass, 45
21 F.3d 1355, 1357-58 (9th Cir. 1995) (evidence of prior kidnaping and rape was admissible to
22 show intent and did not violate due process).  The theory of the defense was based upon the
23 claim that petitioner lacked the requisite intent and that the victim merely misunderstood him.
24 Under these circumstances the jury was entitled to draw a rational and constitutionally
25 permissible inference from the challenged evidence.  Further, any error in admitting this
26 testimony did not have "a substantial and injurious effect or influence in determining the jury's

verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Any threat of improper prejudice flowing from the evidence of prior uncharged acts was mitigated by the trial court's instruction directing the jury to consider evidence that petitioner committed other crimes only as it was relevant to show the existence of intent, identity, or motive and not to show that petitioner was a person of bad character or that he had a disposition to commit crimes. (Clerk's Transcript on Appeal (CT) at 72.) See Spencer v. Texas, 385 U.S. 554, 558 (1967) (it is not a violation of due process to admit other crimes evidence for purposes other than to show conduct in conformity therewith, where the jury is given a limiting instruction "that it should not consider the prior conviction as any evidence of the defendant's guilt on the charge on which he was being tried"); accord Estelle v. McGuire, 502 U.S. at 74-75. The jury in petitioner's case is presumed to have followed this instruction. Old Chief v. United States, 519 U.S. 172, 196-97 (1997); United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998).

For all of these reasons, petitioner is not entitled to relief on this claim.

B. Admission of Prior Conviction

Petitioner's next claim is stated, in full, as follows: "The true finding on the prior conviction allegations must be reversed, Because the court did not advise appellant - of his constitutional rights, - and did not take a valid personal waiver and admission from appellant." (Pet. at 5.)

1. Background

The state court record reflects that the prosecutor intended to admit various minute orders in order to substantiate the enhancement allegation that petitioner had suffered a prior conviction on charges of making terrorist threats. (Reporter's Transcript on Appeal (RT) at 192.) Petitioner's trial counsel expressed concern over the introduction of these orders because they contained additional information concerning dismissed charges against petitioner as well as the prison term imposed. (Id. at 192-93.) The trial court inquired whether the defense wanted to simply admit the prior conviction in order to avoid the possible prejudice involved in admitting

the minute orders into evidence. (Id. at 193.) After conferring with petitioner, defense counsel stated that petitioner was "prepared to admit the prior." (Id. at 194.) The following colloquy then occurred:

> THE COURT: What the Court would suggest is handling it – since we've already put it in the context of telling the jury they have it, a stipulation that the defendant was previously convicted of that felony, and then with that stipulation that could be read to the jury and the Court can instruct the jury to accept that and it will be submitted to the jury with the same form, having them find it true or not true.
>
> The Court will instruct them to find it true in light of the stipulation, and we do – nothing else has to go in front of the jury.
>
> Is the defense willing to handle it in that fashion?
>
> [PETITIONER'S ATTORNEY]: Yes, your Honor.
>
> THE COURT: Mr. Vong, you do have the right to have the jury actually come back with a finding if you are convicted of any of these felony offenses in regard to whether you do or do not have this prior conviction from back in 1991.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And what we're proposing here is since the jury is going to need to reach that issue instead of putting in front of the jury documents it might have other information on it beyond what the jury needs to reach that narrow issue, the defense here has offered to stipulate that you have been convicted of that, which would mean that the Court would then instruct the jury to find that you have been convicted of that if they do find you guilty of any of these offenses and from that standpoint then the jury would not have to receive or look at any documentation surrounding that prior conviction.
>
> Are you willing to enter into such a stipulation, Mr. Vong?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And Mr. Bowie, you're satisfied that you've discussed it with your client and that he is intelligently and voluntarily choosing to proceed in this fashion and enter this stipulation?
> MR. BOWIE: Yes, your Honor.

> THE COURT: With that said, what the Court will do then is just inform the jury that the defense and Prosecution have stipulated that the defendant was previously convicted of a felony, to wit, a violation of Penal Code Section 422, terrorist threats on September 18, 1991, in the Superior Court of California, for the County of Sacramento and ask both counsel in front of the jury whether they agree with that stipulation. Both will say yes, and then we don't have to have any documentation to go in front of the jury.
>
> And the Court will be instructing the jury at the appropriate place in the instructions if they do convict him, they're obligated to come back and find that allegation of the prior conviction true in light of the stipulation of counsel.
> Any objection to handling the matter in that fashion?
>
> MR. BOWIE: No, your Honor.
>
> [THE PROSECUTOR]: No, your Honor.

(Id. at 194-96.) The jurors were subsequently instructed that because of the parties' stipulation to the prior conviction, they must "find the allegation of the prior conviction to be true if you find the defendant guilty of any of the charges." (CT at 73.)

On appeal, petitioner argued that the record did not demonstrate that he knowingly waived his constitutional rights at the time he agreed to the stipulation admitting his prior conviction and that his admission was therefore invalid. (Answer, Ex. A at 19-26.) Petitioner also argued that pursuant to California law the stipulation entered into by his trial counsel did not bind him personally to an admission of the prior conviction. (Id. at 19-20.) The California Court of Appeal rejected petitioner's arguments in this regard with the following reasoning:

> At the outset, we reject defendant's claim that he did not personally admit the prior because defense counsel entered into a stipulation. The record demonstrates the falsity of this claim. After the court and defense counsel discussed the issue of the stipulation, the court addressed itself directly to defendant. The court informed defendant that he had the right to a jury on the prior conviction allegation, and explained the proposed stipulation. The court then asked defendant if he was willing to enter into such a stipulation, to which defendant replied, "Yes." This exchange satisfied the requirements of Penal Code section 1018, that any plea be entered by the defendant in open court. (footnote omitted).
> We also reject defendant's claim that the true finding on his prior

> conviction must be reversed as he was not properly advised of his constitutional rights.
>
> Boykin v. Alabama and In re Tahl hold that for the court to accept a defendant's plea of guilty, the record must show the defendant's plea was voluntary and intelligent, and to be so, the defendant must be advised of his right to a jury trial, the right to remain silent and the right to confront witnesses. The California Supreme Court has extended the Boykin-Tahl admonitions to the admission of prior convictions. In this case, defendant was not advised of his right to remain silent or his right to confront witnesses, he was only advised of his right to a jury trial. It is this lack of advice about which defendant now complains. (footnotes omitted).
>
> It is true that the trial court erred in failing to completely advise defendant of his Boykin-Tahl rights. However, this error does not lead inexorably to the conclusion the true finding must be reversed. "[E]rrors in the articulation and waiver of [Boykin-Tahl] rights shall require the plea to be set aside only if the plea fails the federal test." That is, "[t]he record must affirmatively demonstrate that the plea was voluntary and intelligent under the totality of the circumstances." (footnotes omitted).
>
> Under the totality of the circumstances in this case, the record affirmatively demonstrates defendant's admission was voluntary and intelligent. (footnote omitted). Defendant's prior felony conviction was admitted through a stipulation. Defendant was informed he had the right to have a jury decide the issue of whether he had suffered a prior felony conviction and was informed his admission would remove that issue from the jury's consideration. He was represented by counsel throughout the proceedings and discussed the matter with his attorney before admitting the prior conviction. After these discussions, trial counsel was satisfied defendant's admission was voluntary and intelligent.
>
> Furthermore, defendant made his admission with only one prosecution witness remaining to be called. Defendant did not call any witnesses himself, and did not testify himself, decisions apparently made before trial. Thus, at the time of his admission, defendant had invoked each of his Boykin-Tahl rights, his right to a jury trial, his right to confront witnesses and his right to remain silent. As in Howard, "[o]n this record, considering the totality of the relevant circumstances, we conclude that defendant's admission of the prior conviction was voluntary and intelligent despite the absence of . . . explicit admonition[s]" on the privilege against self-incrimination and the right to confront witnesses. (footnote omitted). Accordingly, we affirm the true finding.

(Opinion at 8-10.)

/////

2. <u>Analysis</u>

In <u>Boykin v. Alabama</u>, 395 U.S. 238 (1979) the United States Supreme Court held that a constitutionally valid guilty plea depends upon a record reflecting that the defendant knowingly and voluntarily waived his rights to jury trial, confrontation and privilege against self-incrimination. In the context of a habeas corpus action, a prior final conviction is entitled to a presumption of regularity. <u>Parke v. Raley</u>, 506 U.S. 20 (1992).

The first question presented here is whether or not petitioner's admission of the charged prior conviction is tantamount to a guilty plea to which the rule expressed in <u>Boykin</u> is applicable. In this regard, the Ninth Circuit Court of Appeals has held that an admission of a prior felony conviction is the functional equivalent of a guilty plea to a separate charge. <u>Wright v. Craven</u>, 461 F.2d 1109 (9th Cir. 1972). Accordingly, the admission is not valid unless the defendant understands the consequences flowing therefrom. <u>Id.</u> at 1110. However, the Ninth Circuit has subsequently interpreted the holding in <u>Wright</u> to require only that the trial court determine whether the defendant knowingly and voluntarily agreed to the stipulation of the fact of a prior conviction. <u>Adams v. Peterson</u>, 968 F.2d 835, 841 n.4 (9th Cir. 1992). Thus, admissions of prior convictions which may subject a defendant to enhanced penalties under a recidivist statute need satisfy only the test of voluntariness applicable to stipulations. <u>Id.</u>

As noted above, the California Court of Appeal found that petitioner knowingly entered into a stipulation admitting the prior conviction in order to avoid having the jury view documentation related to his prior conviction that was possibly prejudicial to him. The record fully supports that conclusion. Petitioner weighed the costs and benefits of stipulating to his prior conviction and made a rational decision to pursue that route. (RT at 195.) Petitioner was also specifically advised that if he entered the stipulation the jury would be instructed to find that he had suffered the prior conviction should they convict of him of the pending charge. (RT at

/////

/////

196.).[7] The decision of the California Court of Appeal rejecting petitioner's claim in this regard is not contrary to clearly established federal law and should not be set aside.

### C. Jury Instruction Error

In his final claim, petitioner argues that the trial court committed federal constitutional error by including CALJIC No. 17.41.1 in the jury instructions given. He contends that this jury instruction "interferes with the jury's decision making process, and it violates a defendant's constitutional right to independent judgment of each juror as well as the jury's and defendant's constitutional right to juror nullification." (Pet. at 6.)

CALJIC No. 17.41.1, as it was given at petitioner's trial, informs jurors at the outset of jury deliberations that "should ... any juror refuse[] to deliberate or express[] an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation." (CT at 74; CALJIC No. 17.41.1 (1998 new) (6th Ed. 1996)). In People v. Engelman, 28 Cal. 4th 436 (Cal. 2002), the California Supreme Court concluded that CALJIC No. 17.41.1 did not infringe upon a criminal defendant's federal or state constitutional right to a trial by jury or his state constitutional right to a unanimous verdict. 28 Cal. 4th at 439. The California Supreme Court did, however, discontinue the use of CALJIC 17.41.1 in future cases, based on its supervisory authority over lower California courts, because of its conclusion that CALJIC 17.41.1 "ha[d] the potential to lead members of a jury to shed the secrecy of deliberations [and] to draw the court unnecessarily into delicate and potentially coercive exploration of the subject matter of deliberations." Id. at 216.

/////

---

[7] The prosecution was prepared to prove petitioner's prior conviction for making terrorist threats and petitioner has never disputed the validity of that prior conviction. Moreover, there has been no showing that petitioner's sentence would likely have been different had he been advised in more detail regarding the consequences of entering the stipulation with respect to his prior conviction. Therefore, the error, if any, was harmless. See Brecht, 507 U.S. at 628-30.

The California Court of Appeal rejected petitioner's claim in this regard with the following reasoning:

> In People v. Engelman,[8] our Supreme Court recently rejected a claim that the giving of CALJIC No. 17.41.1 constituted error. However, in the exercise of its supervisory power, the court directed that CALJIC No. 17.41.1 not be given in trials conducted in the future. Engelman is fatal to defendant's contention.

(Opinion at 10.)

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton, 768 F.2d at 1085 (citing Engle, 456 U.S. at 119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines, 658 F.2d at 673, (citing Quigg, 616 F.2d at 107); see also Lisenba, 314 U.S. at 236.

In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil, 843 F.2d at 317 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous

---

[8] People v. Engelman (2002) 28 Cal. 4th 436.

instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

Here, petitioner's claim for relief based upon the California Supreme Court's decision in Engelman has been specifically rejected by the Ninth Circuit Court of Appeals. In this regard, the court has stated:

> The California Supreme Court, however, discontinued the use of CALJIC 17.41.1 only in future cases, based solely on its supervisory authority over lower California courts. It did not find that the instruction violated an established federal constitutional right; indeed, it explicitly stated that no such constitutional violation resulted from the instruction. Id. at 213 (noting that "defendant has not provided any authority, nor have we found any, suggesting that the federal constitutional right to trial by jury ... requires absolute and impenetrable secrecy for jury deliberations in the face of an allegation of juror misconduct, or that the constitutional right constitutes an absolute bar to jury instructions that might induce jurors to reveal some element of their deliberations"). Engelman therefore comports with our own assessment of Supreme Court precedent. The California Supreme Court's decision to eliminate CALJIC 17.41.1 from the California courts' repertoire--as wise as that decision may have been--does not make it a clearly established unconstitutional instruction. In short, [petitioner] has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1--either on its face or as applied to the facts of his case--violated his constitutional rights. Accordingly, we affirm the district court's denial of [petitioner's] federal habeas petition.

Brewer v. Hall, 378 F.3d 952, 957 (9th Cir. 2004). Accordingly, petitioner is not entitled to relief on this claim.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 31, 2006.

           /s/ Dale A. Drozd
           DALE A. DROZD
           UNITED STATES MAGISTRATE JUDGE

DAD:8
vong199.hc